## SWANN v. UNITED STATES.

### No. 6378.

United States Court of Appeals
Fourth Circuit.

Argued March 5, 1952.

Decided March 29, 1952.

·Franklin G. Allen, Baltimore, Md., for appellant.

Frederick J. Green, Jr., Asst. U. S. Atty., Baltimore, Md. (Bernard J. Flynn, U. S. Atty., Baltimore, Md., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The admission in evidence of a part of a signed statement made to officers of the law by the defendant under indictment for the shooting and killing of another person upon sudden quarrel and in heat of passion, is the subject matter of this appeal. Arthur William Swann was indicted for the killing of Raymond Thorne on January 14, 1950 with a rifle at Fort George G. Meade, a government reservation in the District of Maryland, in violation of 18 U.S.C.A. § 1112. Upon the trial the jury found a verdict of guilty and the judge imposed a sentence of seven years' imprisonment.

On January 14, 1950, Swann, who was then about 17 years of age, and Thorne, also a youth, ran away from the District Training School, an institution of the District of Columbia for feeble minded persons in which both boys were inmates.[1] The school is adjacent to Fort Meade. A rifle, a shot gun and some ammunition were taken from the carpenter's shop at the school at the same time. Several hours later Swann returned, but Thorne did not. Swann re-

---

1. Prior to the trial of Swann, proceedings were taken to determine his competency to understand the nature of the charge and to assist in his defense, and the prosecution was delayed until it was found by the court after hearing the testimony of experts that he was competent to stand trial.

ported that Thorne said he was going home to Baltimore to get a job. A few days later Swann stated to an official of the institution that he had been told by a man on the road near the school that a body was lying in a field at the Fort; but a search of the locality was unsuccessful.

There were no further developments until July 1, 1950 when Swann was given a new work assignment at the school. During the next two weeks he made a number of statements in which he admitted killing Thorne and gave information as to the whereabouts in Fort Meade of the body and of the weapons, and after unsuccessful searches the rifle, the gun and the decomposed body of Thorne were finally found in the general locality which Swann had indicated. In describing the killing Swann stated that Thorne wanted him to rob a nearby store but Swann refused and started to return to the school whereupon Thorne threatened him with the gun and an argument followed during which the boys struggled and Swann got the rifle and fired and Thorne fell; and that after Thorne fell the struggle was renewed and Swann shot him again.

Subsequently on July 16, 1950 Swann was questioned by agents of the Federal Bureau of Investigation, and after being advised of his right to refuse to answer he made a statement which was transcribed in narrative form by the agents and signed by him. In this statement Swann told of Thorne's proposal to rob the store, Swann's refusal and attempt to return to the school, Thorne's threat to kill Swann, the struggle over the rifle wherein it fell to the ground and was accidentally discharged and Thorne was shot and fell to the ground. Swann then said that he reloaded the gun and placed it on the ground beside Thorne and knelt beside him, and again the gun was accidentally discharged and Thorne was shot a second time. The statement then contained the following passage:

"I then tried to talk to Raymond but he wouldn't answer me. He was still on his side and his eyes were shut. I don't know whether he was dead or not. He was lying with his head facing towards the woods and his back toward the road. I was scared. I grabbed the gun and ran to the road and down the road. I did not look back. I reloaded the gun as I came up the road. I decided right there that I would return to the Training School and kill Miss Milner. She is one of the matrons and she never did like me and used to punish me a lot."

When this written statement was offered by the government at the trial of the case the defendant moved that the last three sentences in the passage above set out be stricken therefrom and withheld from the jury on the ground that they were irrelevant to the charge in the indictment and could be excised without in any way impairing the sense of Swann's description of the manner in which Thorne was killed. The judge overruled this motion and his action is the basis for this appeal.

The contention of the appellant is that Swann's intention to kill Miss Milner, as expressed in the statement, had no relevance to the question of the accidental or wilful killing of Thorne, but served only to show that the defendant had a propensity to commit homicide and that he was therefore probably guilty of the intentional killing of Thorne. It is pointed out that Miss Milner had no connection with the Thorne case and no knowledge of the killing which might have tempted Swann to remove her as a witness, and that Miss Milner and Thorne did not belong to a class of persons to which Swann was hostile, and that there was no common plan in Swann's mind which required the killing of both persons. Hence it is said that the only purpose and effect of the evidence was to show that Swann was the sort of man who was disposed to take human life and that this kind of evidence is inadmissible under the established rules.

The rule for which the defendant contends is set out as follows in the Model Code of Evidence of the American Law Institute:

"Rule 311. Other Crimes or Civil Wrongs. Subject to Rule 306, evidence that a person committed a crime or civil wrong on a specified occasion is inadmissible as tending to prove that

he committed a crime or civil wrong on another occasion if, but only if, the evidence is relevant solely as tending to prove his disposition to commit such a crime or civil wrong or to commit crimes or civil wrongs generally."

The rule was applied by this court in Lovely v. United States, 4 Cir., 169 F.2d 386, where a new trial was granted to a defendant charged with rape because of the erroneous admission of evidence which showed that shortly before the commission of the offense charged, the defendant had committed a similar offense against another woman in the same locality. The court said, 169 F.2d 386, 388;

"It is true, of course, that evidence which has a reasonable tendency to establish the crime charged in the indictment is not rendered inadmissible merely because it establishes another crime; and the question which arises with respect to this sort of evidence is whether or not it has such tendency. In ordinary cases, it is perfectly clear that evidence of other crimes committed by the accused has no such tendency and is properly excluded as irrelevant. Evidence of the commission of similar offenses closely related in time and place may, however, be relevant on such matters as identity, guilty knowledge, motive or intent, where these are in issue, or may tend to establish a criminal plan or design out of which the crime charged has originated; but it is well settled that such evidence is not admissible where it has no relevance or probative value except in so far as it may show a tendency or likelihood on the part of the accused to commit the crime."

See also Michelson v. United States, 335 U.S. 469, 475, 69 S.Ct. 213, 93 L.Ed. 168.

 It is conceded that the confession of a crime other than the one charged may be received in evidence if it is so interwoven with the confession of the crime charged that the latter cannot be proved without admitting the whole statement in evidence; but it is pointed out that if the sentences in regard to the decision to shoot Miss Milner are omitted, the remainder constitutes a complete confession of the killing of Thorne. See People v. Loomis, 178 N.Y. 400, 70 N.E. 919; Wistrand v. People, 218 Ill. 323, 75 N.E. 891.

On occasion the courts have had some difficulty in deciding whether or not the evidence of a disconnected and independent crime should be admitted because of its tendency to show not merely that the defendant had a propensity to commit the kind of crime charged, but also to show that he actually committed that crime. Thus, in the famous Molineux poisoning case, People v. Molineux, 168 N.Y. 264, 61 N.E. 286, 62 L.R.A. 193, the sending of poisoned candy through the mail and thereby causing the death of one Barnett was thought by Chief Justice Parker in his dissent to be admissible on the trial of Molineux on the charge of causing the death of another person in the same fashion, because the unusual method tended to identify the defendant as the perpetrator of both crimes; and in Lawrence v. State, 128 Tex.Cr.R. 416, 82 S.W.2d 647, where the defendant was indicted for shooting and killing a boy while hunting ducks on the defendant's land, evidence that the defendant had shot at persons similarly engaged the day before, was thought by the writer of the dissenting opinion to be relevant to show the defendant's purpose to shoot at all trespassers on his property.

 The question in the pending case is also not free from difficulty; but the circumstances related above lead us to conclude that the statement by the accused himself of what was in his mind almost immediately after the shooting of Thorne is relevant to his intent at the time when that shooting occurred. Since the killing is admitted, the whole case turns upon the inquiry whether it was accidental or intentional. If it were accidental, Swann might have been expected to be horrified and appalled by his action and afraid of the consequences, and the last thing that would be likely to enter his mind would be the decision to kill another person. On the other hand, the intent to kill a person against whom a grievance was entertained might find place in the heated and distorted mind

of one who had just killed an antagonist in a sudden quarrel. We do not suggest that the mental reactions described in the alternative would necessarily follow the supposed cases, but that they are sufficiently reasonable to justify submission of the evidence to triers of fact charged with the responsibility of determining what was in the defendant's mind at the time of the event.

A similar line of reasoning led to a like result in Copeland v. United States, 80 U.S. App.D.C. 308, 152 F.2d 769, where evidence was admitted in a prosecution for murder that the defendant deliberately pursued and shot the victim's sister immediately after the defendant shot the victim. The evidence was received on the theory that it tended to show that the shooting of the victim was not an accident during an attempt at self defense but was done with deliberate intent to kill. The court said, 152 F.2d 769, 770:

"Appellant's counsel complains of the admission in evidence of the shooting of Hazel, which he describes as 'another offense.' There is no merit in this objection. It would be absurd to consider a homicide without regard to relevant events which immediately preceded and followed it. The fact that appellant deliberately pursued and shot Hazel immediately after he shot Dora tends to show that his shooting of Dora was not, as he claimed it was, an accident in an attempt at self-defense against William, but was done with deliberate intent to kill. Evidence of the shooting of Hazel was therefore rightly received. Acts similar to the crime charged, which tend to show the intent with which the criminal act was done, are admissible for that purpose though they may themselves be criminal. In a prosecution for homicide, 'the recurrence of other acts of the sort tends to negative inadvertence, defensive purpose, or any other form of innocent intent.' "

For these reasons, we think there was no error in the admission of the entire statement of the defendant to the government officers. In addition it should be said that the judge in his charge referred to the portions of the statement that had been objected to and cautioned the jury that they should not reach the conclusion that the shooting of Thorne was intentional merely because the defendant shortly thereafter formed the intent to kill Miss Milner, who had punished him; but that they might consider this part of the statement in connection with the whole as bearing upon the question whether the killing of Thorne was intentional or accidental, and that if the jury had any reasonable doubt as to whether the killing was intentional or accidental, their verdict should be not guilty.

Affirmed.