911 P.2d 74

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Ronnie HENDERSON, Defendant–Appellant.**

**No. 17151.**

Supreme Court of Hawai'i.

Feb. 7, 1996.

Tom Griswold, on the briefs, Wailuku, Maui, for defendant-appellant.

Robert K. Kekuna, Jr., on the briefs, Department of the Prosecuting Attorney, County of Maui, Wailuku, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

Defendant-appellant Ronnie Henderson (Appellant) was convicted of terroristic threatening in the first degree, in violation of Hawai'i Revised Statutes (HRS) § 707–716(1)(d) (1993).[1] On appeal, Appellant contends that the trial court erred in failing to suppress statements he made to Maui Police Officer Mark Kaaa while Appellant was in Kaaa's custody. We disagree and affirm Appellant's conviction.

## I. BACKGROUND

On September 17, 1992, Appellant and Christine Jones (Christine), with whom Appellant allegedly had a relationship, were engaged in a conversation while standing in the parking lot of the restaurant where Christine worked. Apparently, Christine did not want to speak with Appellant, so she asked her manager to call her son, John, to come to the restaurant to escort her home. Shortly thereafter, John arrived at the restaurant. John intervened in the conversation, resulting in a heated argument between Appellant and John. Appellant threw a punch at John that inadvertently landed on Christine. Appellant then reached into his back pocket and produced an item that witnesses claimed was a knife. Appellant maintained that it was a screwdriver. Upon seeing the object, John backed away and left the scene.

The next day, September 18, 1992, Appellant was arrested by Kaaa and was brought to the Wailuku Police Station. At the station, Kaaa provided Appellant with the "Maui Police Department Warning and Waiver Form No. 103," which informed Appellant that, before the police could ask him any questions, he must understand the following:

1. He had a right to remain silent;
2. That anything he said could be used against him in a court of law;
3. That he had a right to talk with a lawyer for advice before any questions were asked and to have a lawyer with him during questioning;
4. That if he could not afford a lawyer, one would be appointed for him before any questions were asked.

Appellant read out loud each of the aforementioned rights. Additionally, he read out loud the section of the form regarding waiver: "I've read the statement of my rights and I understand what my rights are. I'm willing to make a statement and answer questions. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me." Appellant refused to sign the waiver section of the form and indicated that he did not wish to make a statement. Kaaa did not ask Appellant any questions. Kaaa turned away from Appellant and began doing some paperwork.

"About a minute or two" after Appellant was advised of his rights, and after he refused to sign the waiver, Appellant told Kaaa that he wanted to make a statement "off the record." Kaaa informed Appellant that anything he said would be "on the record." At this point, Appellant began speaking. Among other things, Appellant told Kaaa that he "got angry at [John]" and wanted to slap him. Appellant explained that, as he attempted to slap John, Christine intervened, and instead of hitting John, he might have accidently punched Christine. Appellant told Kaaa that, after he swung at John, he could not remember whether he pulled his "screwdriver" out of his back pocket; however, he did remember reaching for it.

---

**1.** HRS 707–716(1)(d) (1993) provides in relevant part that "[a] person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening ... [w]ith the use of a dangerous instrument."

Prior to the start of trial, Appellant moved to suppress the statement made to Kaaa. The trial court denied Appellant's motion. At the close of trial, the jury found Appellant guilty of terroristic threatening in the first degree, in violation of HRS § 707–716(1)(d). Appellant was subsequently sentenced to serve a five-year term of imprisonment. This appeal followed.

## II. STANDARD OF REVIEW

In reviewing the findings of fact (FOF) made by the trial court in connection with a motion to suppress, on which a decision to admit a confession into evidence at trial is based, we have recognized that

> "waiver is a question that requires application of constitutional principles to the facts as found." [State v. Villeza, 72 Haw. 327, 330–31, 817 P.2d 1054, 1056, reconsideration denied, 72 Haw. 617, 841 P.2d 1074 (1991) (citation and internal quotation marks omitted).] Accomplishment of this task "requires us to examine the entire record and make an independent determination of the ultimate issue of voluntariness based upon that review and the totality of circumstances surrounding [the defendant's] statement." Thus, we apply a de novo standard of appellate review to the "ultimate issue [of the] voluntariness" of a confession.

State v. Hoey, 77 Hawai'i 17, 32, 881 P.2d 504, 519 (1994) (citations and internal quotation marks omitted) (some emphasis omitted) (some brackets added and some in original).

## III. DISCUSSION

■ Appellant contends that, because he did not waive his right to remain silent, his statement to Kaaa was not voluntary, and, therefore, the trial court erred in denying his motion to suppress his statement made to Kaaa. We disagree.

■ "The fundamental purpose of the [United States Supreme] Court's decision in Miranda was 'to assure that the individual's right to choose between speech and silence remains unfettered throughout the interrogation process.'" Connecticut v. Barrett, 479 U.S. 523, 528, 107 S.Ct. 828, 831, 93 L.Ed.2d

920 (1987) (emphasis added) (citing Miranda v. Arizona, 384 U.S. 436, 469, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966)). We have previously noted that "'the protections which the United States Supreme Court enumerated in Miranda have an independent source in the [Hawai'i] Constitution's privilege against self-incrimination.'" Hoey, 77 Hawai'i at 33, 881 P.2d at 520 (quoting State v. Nelson, 69 Haw. 461, 467, 748 P.2d 365, 369 (1987) (quoting State v. Santiago, 53 Haw. 254, 266, 492 P.2d 657, 664 (1971))). In determining the admissibility of custodial statements, "the prosecutor must show that each accused was warned that he had a right to remain silent, that anything said could be used against him, that he had a right to the presence of an attorney, and that if he could not afford an attorney one would be appointed for him." Id. (citations omitted). If these minimal safeguards are not satisfied, then "statements made by the accused may not be used either as direct evidence ... or to impeach the defendant's credibility[.]" Id. (citations omitted).

■ "Assuming, however, that the minimal safeguards are observed, the accused may waive the right to counsel, provided that such waiver 'is voluntarily and intelligently undertaken.'" Id. (citations omitted). See also Moran v. Burbine, 475 U.S. 412, 426, 106 S.Ct. 1135, 1143, 89 L.Ed.2d 410 (1986) ("Miranda attempted to reconcile [competing] concerns by giving the defendant the power to exert some control over the course of the interrogation.") (emphasis in original). Moreover, "[o]nce warned [of his Miranda protections], the suspect is free to exercise his own volition in deciding whether or not to make a statement to the authorities." Oregon v. Elstad, 470 U.S. 298, 308, 105 S.Ct. 1285, 1293, 84 L.Ed.2d 222 (1985) (emphasis added).

> [In determining] whether a valid waiver of the right to counsel and the right to silence occurred, [we review] whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities.

*Edwards v. Arizona,* 451 U.S. 477, 486 n. 9, 101 S.Ct. 1880, 1885 n. 9, 68 L.Ed.2d 378 (1981) (emphasis added). "[A]n explicit statement of waiver is not invariably necessary to support a finding that the defendant waived the right to remain silent or the right to counsel guaranteed by the *Miranda* case." *North Carolina v. Butler,* 441 U.S. 369, 375–76, 99 S.Ct. 1755, 1759, 60 L.Ed.2d 286 (1979).

In the present case, the prosecution showed that Appellant was warned that he had a right to remain silent, that anything said could be used against him, that he had a right to the presence of an attorney, and that if he could not afford an attorney one would be appointed for him. *Hoey,* 77 Hawai'i at 33, 881 P.2d at 520. After Appellant was advised of his *Miranda* rights, he read them aloud and never questioned their meaning. Appellant's request to make an "off the record" statement confirmed his understanding that he had a right to remain silent. Further, the subsequent warning that anything he said would be "on the record" provided another procedural safeguard ensuring that Appellant understood that he had a "right to be silent [and] that anything he said could be used against him in a court of law." Despite Kaaa's warning that anything Appellant said would be "on the record," Appellant initiated the statement of his own volition.

Because Appellant initiated the dialogue with Kaaa after he was properly advised of his *Miranda* rights, and specifically after Kaaa told him that anything he said would be "on the record," notwithstanding the fact that Appellant refused to sign a waiver of his right to remain silent, we hold that Appellant effectively waived his right to be silent. Accordingly, we hold that the trial court did not err in denying Appellant's motion to suppress the statement made to Kaaa.

## IV. CONCLUSION

For the foregoing reasons, we reject Appellant's contention that the trial court erred in denying his motion to suppress and affirm Appellant's conviction.