301 Ga. 7

FINAL COPY

S17A0350.  THE STATE v. CLARK.

BENHAM, Justice.

The State appeals the trial court's pre-trial decision to suppress statements made by appellee William Clark during a police station interview. For the reasons set forth below, we affirm.

1.  This Court has held:

> When reviewing a trial court's ruling on a motion to suppress, an appellate court must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. This means that the reviewing court generally must accept the trial court's findings as to disputed facts unless they are clearly erroneous, although the reviewing court may also consider facts that definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility such as facts indisputably discernible from a videotape.

(Citation and punctuation omitted.)  State v. Allen, 298 Ga. 1, 2 (1) (a) (779 SE2d 248) (2015).

The record from the suppression hearing, including the police detective's testimony and appellee's videotaped statement, shows on March 4, 2008, appellee called 911 after assaulting and killing his paramour,

Deborah Jeffries, by striking her in the head with a golf club and stabbing her in the chest more than 20 times. The first officer on the scene apprehended appellee and placed him in the back of a police vehicle. Shortly thereafter, Detective J. D. Stephens of the Atlanta Police Department arrived on the scene. Detective Stephens testified that, in the presence of the other police officer,[1] he read appellee the Miranda warnings[2] while appellee was sitting in the back of the patrol vehicle at the scene. At the time, appellee was bleeding from an injury to his hand. According to Detective Stephens, the following transpired after he read appellee his rights:

> I then asked him if he lived in apartment number 101. He stated that was his apartment. I then asked him who was the deceased woman lying on the floor. He stated it was Deborah Jeffries and that she was his girlfriend. I asked him who killed her. He stated he couldn't remember. He stated he blacked out. I told him that this was a — that he was going to be transported to Grady Memorial hospital and that I would like to speak with him after he had been treated. He stated he would like to talk to me. That's exactly what happened.

---

[1] The State did not present the witnessing officer at the suppression hearing.

[2] In Miranda v. Arizona, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966), the United States Supreme Court held that, in order to protect the constitutional right against self-incrimination as embodied in the Fifth Amendment, law enforcement must inform a suspect prior to a custodial interview substantively as follows:

> [A suspect] must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Id. at 479. See also Dickerson v. United States, 530 U. S. 428 (120 SCt 2326, 147 LE2d 405) (2000).

After this conversation, police escorted appellee to the hospital for treatment, and Detective Stephens commenced his investigation of the crime scene. Four hours later, after appellee had been released from the hospital and taken to the police station, Detective Stephens interviewed him.

Detective Stephens testified he began video-recording the interview after appellee had already been talking for seven minutes. The video recording is approximately 33 minutes long.[3] Less than 30 seconds into the recording, appellee says, "This is off the record," and Detective Stephens responds, "Yeah." Appellee then proceeds to discuss his three-year history with the victim, accusing her of various nefarious activities and describing how she used her relationships with other men to goad him into becoming upset or angry.[4] About 22 minutes into the recording, Detective Stephens reminds appellee that he was read his rights. Appellee simply continues to talk. At approximately 28 minutes into the interview, appellee puts his head down on the table, but keeps talking. Detective Stephens asks if appellee is okay and tells him he can be taken back to the hospital. Appellee says he

---

[3] During the recorded interview, appellee was handcuffed and dressed in what appears to be a hospital-issued gown and slippers.

[4] Although appellee responds to some questions posed to him by Detective Stephens during the recorded interview, his narrative is rambling, akin to a stream of consciousness.

feels faint and Detective Stephens again offers to take appellee to the hospital. Appellee continues to talk and, with his head down, eventually describes the point at which he hit and stabbed the victim. Detective Stephens again reminds appellee that his rights were read to him and tells appellee that it took a man to tell the truth. Appellee places his head on the table and says his stomach is hurting. At that point, Detective Stephens steps out of the room to call the paramedics. While Detective Stephens is out of the room, appellee can be seen on the video climbing on top of the table, then lying down on it as if in distress. The video then stops. According to Detective Stephens, the paramedics found nothing wrong with appellee and, after they left, he resumed interviewing appellee for about 40 more minutes, but did not record it. Detective Stephens could not explain why he did not record this last portion of his interview of appellee at the police station.

On July 22, 2016, the trial court held a motion to suppress hearing,[5] at which it considered Detective Stephens' live testimony and viewed portions of the videotape. At the close of the hearing, the trial court stated it believed Detective Stephens had read appellee his <u>Miranda</u> rights, but it did not

[5] The eight-year delay between the incident and the suppression hearing appears to be due to the fact that appellee was found to be incompetent at some point while his case was pending for trial.

4

believe appellee understood those rights. In its written order, the trial court found as follows: Detective Stephens read appellee the <u>Miranda</u> warnings at the scene four hours prior to the recorded interview at the police station; Detective Stephens did not re-read the <u>Miranda</u> warnings to appellee; Detective Stephens made "little or no effort" to ensure appellee understood his rights; Detective Stephens responded in the affirmative when appellee stated his belief that the custodial interview was "off the record"; and appellee could have reasonably understood "the detective's affirmation to mean that the interview was in fact off the record…." The trial court granted appellee's motion to suppress his videotaped custodial statement[6] on the ground the State failed to carry its burden to show it was voluntary. We cannot say the trial court's findings were clearly erroneous.

2. A defendant's waiver of the right to remain silent during a custodial interview must be made "voluntarily, knowingly and intelligently." <u>Miranda v. Arizona</u>, 384 U. S. 436, 444 (86 SCt 1602, 16 LE2d 694) (1966). "But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be

---

[6] The statements made by appellee while sitting in the patrol car and during the seven minutes he spoke with Detective Stephens at the police station just prior to being recorded are not at issue.

5

used against him." Id. at 479. The inquiry into whether a waiver is voluntary, knowing and intelligent has "two distinct dimensions":

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

(Citation omitted.) Moran v. Burbine, 475 U. S. 412, 421 (II) (A) (106 SCt 1135, 89 LE2d 410) (1986). In this case, the trial court essentially concluded appellee did not have a "full awareness of both the nature of [his] right [against self-incrimination] and the consequences of the decision to abandon it."

This Court has held that when an accused has received Miranda warnings, but subsequently the police officer affirmatively states that an accused's custodial statements will be kept confidential, the resulting statements are inadmissible at trial. See Spence v. State, 281 Ga. 697, 699 (2) (642 SE2d 856) (2007). In reaching this conclusion in Spence v. State, which is the precedent cited by the trial court in its order granting appellee's motion to suppress, this Court relied on Hopkins v. Cockrell, 325 F3d 579, 585 (5th Cir. 2003), in which the United States Court of Appeals for the Fifth

6

Circuit reasoned that, "An officer cannot read the defendant his <u>Miranda</u> warnings and then turn around and tell him that despite those warnings, what the defendant tells the officer will be confidential and still use the resultant confession against the defendant." Other jurisdictions have made similar rulings as we did in <u>Spence v. State</u>. See <u>Leger v. Commonwealth</u>, 400 SW3d 745, 748 (II) (Ky. 2013) (police officer's promise of confidentiality during a custodial interview vitiated the previously given <u>Miranda</u> warnings and waiver); <u>Lee v. State</u>, 418 Md. 136, 149 (III) (12 A3d 1238) (2011) (officer's statement that the custodial interrogation was "between you and me" was in violation of <u>Miranda</u> and rendered the accused's subsequent statements inadmissible during the state's case-in-chief); <u>State v. Stanga</u>, 2000 S.D. 129 (C) (617 NW2d 486) (2000) (where police officer told the accused twelve times that the interrogation was between the two of them, prior <u>Miranda</u> warnings were nullified and trial court erred in failing to suppress custodial statement).

Here, it was correct for the trial court to rely on <u>Spence v. State</u>.[7] It is of no moment that the words at issue here are "off the record" rather than

---

[7] We note further that our analysis in this case is not concerned with the statutory voluntariness of a custodial statement under OCGA § 24-8-824.

"confidential." The phrase "off the record" is an adjective defined as *given or made in confidence* and not for publication," according to the Merriam-Webster Dictionary.[8] (Emphasis supplied.) Although the phrase is often used as a journalistic term of art, the phrase is also used in everyday parlance to signify the speaker's desire for the listener to keep his words in confidence. In State v. Pillar, 359 N.J. Super. 249 (820 A2d 1) (2003), the New Jersey Superior Court considered a case factually analogous to this one. There, upon having been read the Miranda warnings, the defendant eventually said he wanted a lawyer, and all questioning stopped. Id. at 262-263. While being booked, however, the defendant asked to speak to the officer "off the record," the officer affirmatively agreed, and, thereafter, the defendant made inculpatory statements which the trial court admitted at trial. Id. at 263. On appeal, the Pillar court determined the officer's agreement to speak with the defendant "off the record" "eviscerate[d]" the prior Miranda warnings and rendered any waiver of rights invalid. Id. at 268. In addition, the Pillar court held that the defendant's resulting custodial statement was, under the totality of the circumstances, involuntary. Id. at 268-274.[9] In reaching its conclusion

---

[8] https://www.merriam-webster.com/dictionary/off-the-record (accessed March 29, 2017).

[9] Whether a defendant has voluntarily waived his Miranda rights and whether his resulting confession was given voluntarily are "separate yet interrelated" questions. United States v. Lall, 607 F3d 1277 (II) (11th Cir. 2010).

8

that the custodial statement at issue was involuntary, the Pillar court reasoned:

> [C]ertain promises, if not kept, are so attractive that they render a resulting confession involuntary. A promise that any statement will not be used against the accused is such a promise. . . . [A]n assurance that a statement would not be used against a suspect goes beyond a direct promise of leniency. If defendant believed that his statement could not be used against him, despite the earlier Miranda warnings, his statement made as a result of that false assurance could not be a free and voluntary one. Stated differently, the improper promise actually induced the incriminating statement.

(Citations and punctuation omitted.) Id. at 273. See also Leger v. Commonwealth, supra, 400 SW3d at 750 (II) (an affirmative response from law enforcement that an accused's statements in a custodial interview will not be used against him is a type of "misconstruction" which has the effect of inducing the accused to "incriminate himself").

The videotape supports the trial court's finding that appellee did not fully understand his right against self-incrimination. Detective Stephens' affirmative agreement to keep the discussion "off the record" had the effect of nullifying the Miranda warning previously given to appellee (see State v. Pillar, supra, 359 N.J. Super. at 268) and rendering appellee's custodial statement inadmissible as to the State's case-in-chief (see Phillips v. State,

285 Ga. 213 (2) (675 SE2d 1) (2009)). Indeed, at the moment appellee said he wanted to talk "off the record," Detective Stephens should have taken some action to disabuse appellee of the notion that any of his statements could be treated as "off the record." At a bare minimum, Detective Stephens should have advised appellee that anything he said to police was "on the record." See, e.g., State v. Henderson, 80 Hawai'i 439 (III) (911 P2d 74) (1996) (where, after being given Miranda warnings, accused asked to speak "off the record" and officer told him anything he said would be "on the record," the accused's custodial statement was admissible). See also Foster v. State, 258 Ga. 736 (8) (b) (374 SE2d 188) (1988) ("An accused must be warned that anything he says can and will be used against him in court. [Cit.] Telling him that a confession is not going to hurt and, on the contrary, will benefit him as much as the police, is not consistent with the warnings required by Miranda.").[10]

---

[10]Detective Stephens' testimony at the suppression hearing indicates he believed he had fulfilled all obligations under Miranda the moment he read appellee his rights in the patrol car at the crime scene some four hours prior to the interview at the police station. While Miranda warnings need not be repeated in every set of circumstances (see, e.g., Mainor v. State, 259 Ga. 803 (3) (387 SE2d 882) (1990); Thomas v. State, 259 Ga. 202 (3) (378 SE2d 686) (1989)), Detective Stephens was required to take more action to ensure adherence to the constitutional protections afforded by Miranda when appellee stated he wanted to speak "off the record."

Since Detective Stephens took no such steps to rectify appellee's lack of understanding of his right against self-incrimination, his simple affirmation to appellee's unqualified assertion that he wanted to speak off the record created a false promise which had the effect of inducing appellee to incriminate himself during the interview at the police station. Appellee was not in a frame of mind to resist such an attractive promise in spite of previous Miranda warnings. Here, "the facts fail to establish [by a preponderance of the evidence[11]] that [appellee's police station] statement[s][12] [were] voluntary" (State v. Pillar, supra 359 N.J. Super. at 273), and, therefore, they are not admissible at trial for any purpose (see Mincey v. Arizona, 437 U. S. 385 (II) (98 SCt 2408, 57 LE2d 290) (1978)).

The State cites to this Court's decision in Carswell v. State, 268 Ga. 531 (491 SE2d 343) (1997), as being dispositive of this case, but it is not. In that case, Carswell submitted to three custodial interviews. Carswell initiated the second interview which occurred three hours after the first interview. The third interview took place several days later. Prior to each of the three interviews, the police read Carswell the Miranda warnings. During the first

---

[11] See High v. State, 233 Ga. 153 (1) (210 SE2d 673) (1974) (the State must prove by a preponderance of the evidence that a confession is voluntary).

[12] Not only is appellee's videotaped statement involuntary, but also the statements appellee made during the 40 minutes of the police station interview that was not recorded.

interview, however, one of the officers told Carswell they were speaking "off the record." Id. at 533. Since appellee initiated the second interview and the third interview took place days later, and both interviews were accompanied by *re-readings of the Miranda warnings*, we found that, by the second interview, "Carswell could not reasonably have expected that his interrogation was being conducted off the record." Id. We specifically declined to "consider whether a confession made in direct response to an untrue assertion that a suspect is speaking off the record is admissible." Id. at 533, n. 8. Thus, Carswell is distinguishable in two respects. First, in this case, the State concedes that appellee was never re-read his Miranda rights. Secondly, in Carswell, we declined to reach the issue that is squarely before us today.

The trial court did not err when it granted appellee's motion to suppress on the ground that the State failed to prove appellee's police station statements, which were made following his "off the record" comment, were voluntary.

Judgment affirmed. All the Justices concur.

Decided April 17, 2017.

12

Murder. Fulton Superior Court. Before Judge Baxter.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, F. McDonald Wakeford, Lyndsey H. Rudder, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellant.

Jennifer Lubinsky, Kenneth D. Kondritzer, for appellee.