Delbert LEGER, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2012–SC–000067–MR.

Supreme Court of Kentucky.

June 20, 2013.

Roy Alyette Durham, II, Assistant Public Advocate, for Appellant.

Jack Conway, Attorney General, Julie Scott Jernigan, Assistant Attorney General, for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Delbert W. Leger, appeals as a matter of right, pursuant to Ky. Const. § 110, from a judgment of the Rockcastle Circuit Court convicting him of one count of theft of identity (KRS 514.160) and one count of theft by deception under $500.00 (KRS 514.040). After further finding Appellant guilty of the status offense of first-degree persistent felony offender (PFO), the jury fixed his sentence at twenty years' imprisonment for theft of identity and one hundred and eighty days' imprisonment for theft by deception, both to be served concurrently, for a total sentence of twenty years' imprisonment. The trial court imposed the sentence accordingly.

On appeal, Appellant raises several grounds for reversal. Most significantly, Appellant argues that after he was taken into police custody, he was not properly advised of his *Miranda* rights, and therefore the statement he subsequently made to police was improperly admitted into evidence. In the particular circumstances of this case, Appellant raises an issue of first impression for this Court. Upon consideration of that issue, we reverse the con-

viction and remand this matter to the Rockcastle Circuit Court for further proceedings. Of the other issues raised in this appeal, we address only those that are likely to recur upon retrial of the case.

## I. FACTUAL AND PROCEDURAL HISTORY

According to the Commonwealth's theory, Appellant engaged in a scheme to take money from several acquaintances of his brother, Doug Leger, who was confined to a nursing home. Pretending to be Doug, Appellant called as many as eight of Doug's acquaintances and falsely claimed to have an urgent need for money. Although there was some variation on the theme with each victim, Appellant generally explained that "his" (meaning Doug's) girlfriend was stranded out-of-state with car trouble and needed money in order to return home. The amount solicited from each victim ranged from $100.00 to $350.00 and was paid by either cash or check. Since Doug was in a nursing home, the caller informed the victim that Appellant would collect the money. As a result of this scheme, Appellant was indicted for a single count of theft of identity and a single count of theft by deception that identified eight individuals as victims of the theft. The Commonwealth determined that Appellant had taken a total of $1,714.00 from at least eight victims using this scheme.

Trooper Allen of the Kentucky State Police arrested Appellant. Allen and Appellant had been acquainted with each other for many years. On the way to the Rockcastle County Sheriffs Office in Allen's cruiser they began conversing about a variety of topics. During that conversation, Appellant volunteered an unsolicited incriminating statement. Immediately thereafter, Allen advised Appellant of his *Miranda* rights. At the sheriff's office,

Allen formally questioned Appellant and recorded the session on an audio recording device. In the beginning of the interview, Allen stated: "You know I've advised you of your rights, you know your rights, you don't have to talk to me." Appellant responded in the affirmative. Appellant then admitted to making one of the telephone calls and using his brother's identity to obtain money. However, when Allen questioned Appellant about a specific call to another individual, Appellant abruptly asked Allen, "What I am telling you now is between us, right. It ain't goin' [unintelligible]? Allen replied, "Right." Appellant subsequently confessed to taking money from five of the eight victims identified in the indictment, and made other incriminating remarks that were used against him at trial, including admissions that he used illegal drugs.

Appellant was then charged by the Rockcastle County Grand Jury with a single count of theft of identity, and a single count of felony theft by deception ($500 or more) that identified eight individual victims, although the largest amount taken from any single victim was $350.00. In subsequent pre-trial proceedings and upon the basis that the individual misdemeanor thefts could not be aggregated to make a felony offense, the Commonwealth moved to amend the charge to a single misdemeanor count of theft by deception *under* $500. KRS 514.040(8).

At trial, Appellant denied that he made any of the telephone calls to the victims, and testified that he picked up the money at the request of Doug and Doug's girlfriend. He stated that he had done this for his brother on prior occasions, and for his services he was given a portion of the money collected. He claimed that he had falsely admitted to Trooper Allen that he made the calls so that Doug's girlfriend would not be arrested. Doug testified at

trial that he was not responsible for the telephone calls. There was no testimony from any witness identifying Appellant as the caller. As previously noted, the jury convicted Appellant on both charges, and of being a PFO.

## II. THE OFFICER'S ASSURANCE OF CONFIDENTIALITY VITIATED PREVIOUSLY GIVEN *MIRANDA* WARNINGS.

This case presents us with an issue we have not heretofore addressed: whether Trooper's Allen's agreement that Appellant's statement would be confidential vitiated the previously-given *Miranda* warning. Appellant argues that his incriminating statements were made without a fair understanding and voluntary waiver of his *Miranda* rights, and the trial court erred in failing to suppress them. He further contends that the "excessively friendly" interrogation conducted by Trooper Allen was so deceptive that it unfairly induced Appellant to forget that the trooper was an "adversary," and "revealed an atmosphere" that prompted Appellant to speak against his better interest.

First, we see absolutely nothing improper about Trooper Allen's courteous and friendly demeanor or the impression of cordiality created by his manner of speaking with Appellant. There is nothing wrong with civility in police interrogations. We do, however, find ourselves in agreement with Appellant that Trooper Allen's response to a question posed by Appellant during his custodial interrogation vitiated the *Miranda* warning by assuring Appellant that his statement would *not* be used

against him, but would instead remain between the two of them.[1]

A waiver of one's right to remain silent and to refuse to make incriminating statements must be made "voluntarily, knowingly and intelligently." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Before introducing evidence of a defendant's incriminating custodial statement, the prosecuting authority must demonstrate that the defendant's waiver of his right to remain silent was free from coercion, and that he understood "the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). One purpose for requiring the recitation of *Miranda* rights to an accused person in police custody is to "assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process." *Miranda*, 384 U.S. at 469, 86 S.Ct. 1602. Under *Miranda*, police must warn a suspect before conducting a custodial interrogation that, *"he has the right to remain silent,* [and] *that anything he says can be used against him in a court of law[.]"* *Id.* at 479, 86 S.Ct. 1602 (emphasis added).

Here, shortly after being taken into police custody, Appellant began to talk casually about the crime. Trooper Allen then rendered the necessary *Miranda* warning to apprise Appellant that, among other things, anything he said to the police would be used as evidence against him in court. When they resumed the conversation at the sheriffs office, and in direct response to questions posed by Trooper Allen, Appellant asked, "Now, let me ask

---

1. Appellant also argues that the trooper never fully provided the *Miranda* warnings in the first place. The trial court concluded otherwise and Appellant has provided no reason for us to doubt the accuracy of that finding. Our analysis proceeds on the theory that Appellant was given the appropriate *Miranda* warnings before he was interrogated.

you this, what I am telling you now is between us, right? It won't go [unintelligible]?" Instead of reciting the requirements of *Miranda*, about which by his question, Appellant apparently had some doubt, the trooper responded with "Right," thereby clarifying for Appellant that their discussion *would*, despite the prior *Miranda* warning, be kept between the two of them. The trooper's affirmative answer was the exact opposite of what the proper *Miranda* warning requires. It informed Appellant that what he said to the officer would remain confidential, and, therefore, would not be used against him in court. Although we have not had an occasion to review how such an assurance of confidentiality affects the *Miranda* warning and the admissibility of the defendant's subsequent statements, courts of several other jurisdictions have. We find their analysis to be instructive.

The Maryland Court of Appeals[2] reviewed the issue under remarkably similar facts and rendered a well-reasoned opinion in *Lee v. State*, 418 Md. 136, 12 A.3d 1238 (2011). In *Lee*, a murder-robbery suspect (Lee) was arrested by police detectives and taken to the police station to be interviewed. He was informed by a detective "anything you say can and will be used against you in a court of law." *Id.* at 1241. Lee admitted to having some knowledge about the crime being investigated. When pressed to explain more, Lee offered additional details, and said "Yeah, this [meaning the interview] is being recorded." The detective responded, *"This is between you and me, bud. Only me and you are here, all right? All right?"* *Id.* at 1243. After reversing the trial court's refusal to suppress the statement, the Maryland court observed:

> Since *Miranda* was decided, courts have applied the principles of that case and

its progeny to hold that, after proper warnings and a knowing, intelligent, and voluntary waiver, the interrogator may not say or do something during the ensuing interrogation that *subverts those warnings and thereby vitiates the suspect's earlier waiver by rendering it unknowing, involuntary, or both.*

*Id.* at 1248 (emphasis added).

Similarly, in *Hopkins v. Cockrell*, the United States Court of Appeals for the Fifth Circuit concluded that a police officer's comment to the suspect being interviewed that, *"[t]his [meaning the defendant's statement] is for me and you. This is for me. Okay. This ain't for nobody else,"* was an assurance of confidentiality that undermined the *Miranda* warnings previously given. 325 F.3d 579, 584 (5th Cir.2003) (emphasis added). The *Hopkins* court cited *Miranda* for the proposition that "an officer cannot read the defendant his *Miranda* warnings and then turn around and tell him that despite those warnings, what the defendant tells the officer will be confidential and still use the resultant confession against the defendant." *Id.* at 585.

The same issue was addressed by the Supreme Court of Georgia in *Spence v. State*, 281 Ga. 697, 642 S.E.2d 856 (2007), where Spence, arrested for rape, was interrogated about a murder unrelated to the arrest. During the interrogation that followed, Spence was read the *Miranda* warnings. After saying nothing to implicate himself in the crime, Spence broke down in tears, and asked if he could talk to his girlfriend. The interrogating officer told Spence "Just you and me, just you and me." Spence said: "I'm just scared when I go to jail, everybody gonna know that I said something." To that the officer responded, *"ain't nobody saying nothing,*

---

**2.** The Maryland Court of Appeals is Maryland's highest court.

*this is confidential." Id.* at 857 (emphasis added). Then, the officer repeated that *"nobody knows what you're there for,"* because *"[t]his is confidential what we're doing right here. Do you understand that? This is confidential. . . . " Id.* (emphasis added).

The Georgia Supreme Court held "[a]n accused must be warned that anything he says can and will be used against him in court. Telling him that a confession is not going to hurt and, on the contrary, will benefit him as much as the police, is not consistent with the warnings required by *Miranda." Id.* at 858 (quoting *Foster v. State,* 258 Ga. 736, 374 S.E.2d 188, 194 (1988)).

In *State v. Pillar,* 359 N.J.Super. 249, 820 A.2d 1 (2003), the defendant, after receiving proper *Miranda* warnings and making a knowing and voluntary *Miranda* waiver, was asked by the police if he wished to speak. The defendant asked if he could say "something off-the-record." The police agreed, and the defendant then made an incriminating statement. The New Jersey court held:

> A police officer cannot directly contradict, out of one side of his mouth, the *Miranda* warnings just given out of the other. An acquiescence to hear an "off-the-record" statement from a suspect, which the officer ought to know cannot be "off-the-record," totally undermines and eviscerates the *Miranda* warnings, at least with respect to a statement made, as here, in immediate and direct response to the misleading assurance.

*Id.* at 11–12.

As the Maryland Court noted in *Lee,* the rationale underlying all these decisions is that an interrogating police officer's suggestion that the suspect's statement will remain "just between you and me," or similar words conveying an assurance of confidentiality is in direct contradiction of the *Miranda* requirement that the suspect be warned that *anything* he says to the detective could and would be used against him in court.

In the present case, there was no ambiguity in either Appellant's question or in the trooper's answer. Appellant asked if what he said to the trooper would be kept confidential, i.e., that it would *not* be used against him in a court of law. By answering in the affirmative, the trooper confirmed that Appellant's words *would not* be used against him in a court of law. With that misconstruction of the right to remain silent, Appellant was induced to incriminate himself.

We recognize that our law allows, and should allow, police officers to use deception and artifice to "mislead a suspect or lull him into a false sense of security" that, *despite his understanding of the Miranda warning,* might prompt him to speak against his own interest. *See Illinois v. Perkins,* 496 U.S. 292, 297, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990); *see also Moran,* 475 U.S. at 423–24, 106 S.Ct. 1135. That, however, is not what occurred here. Appellant did not opt to ignore the warning that his words could be used against him in a court of law. He effectively asked if his words would remain confidential and was expressly told that what he said would not be used against him. Artful deception is an invaluable and legitimate tool in the police officer's bag of clever investigative devices, but deception about the rights protected by *Miranda* and the legal effects of giving up those rights is not one of those tools.

For instance, in *State v. Stanga,* 617 N.W.2d 486 (S.D.2000), the Supreme Court of South Dakota, under similar circumstances, recognized that "trickery is sometimes a legitimate interrogation technique." However, the Court in *Stanga*

emphasized that the *Miranda* warnings are a prerequisite to a custodial interrogation and may not be manipulated through deception:

> These warnings would be senseless if interrogating officers can deceive suspects into believing their admissions will not go beyond the interrogation room. As the warnings are constitutionally required interrogation techniques designed to mislead suspects about those warnings are impermissible.

*Id.* at 491 (citation omitted).

We agree with that expression of the law. Requiring police to give the proper *Miranda* warning and then allowing it to be countermanded with a false assurance that the suspect's statements *will not* be used against him, "requires suppression of any statements the suspect makes thereafter during the interrogation." *Lee,* 12 A.3d at 1248. When that occurs, as it did in this case, the warnings required by the United States Supreme Court in *Miranda* are vitiated. Statements made in response to such assurances of confidentiality are statements made in violation of *Miranda* and must be suppressed.[3] Therefore, the judgment of the Rockcastle Circuit Court in this matter is reversed, and case is remanded for further proceedings consistent with this opinion.

Appellant raised two other assertions of error arising from the use at trial of the portions of Appellant's statement to the trooper made after the assurance of confidentiality and the corresponding vitiation of the *Miranda* warning. First, Appellant objected to the portions of the statement

in which he discussed with the police his drug addiction and willingness to attend a drug rehabilitation program. The trial allowed the use of this evidence despite the KRE 404(b) implications because it tended to prove a motive for Appellant's theft. We have held that evidence of a drug habit, along with evidence of insufficient funds to support that habit, is relevant to show a motive to commit a crime in order to gain money to buy drugs." *Adkins v. Commonwealth,* 96 S.W.3d 779, 793 (Ky. 2003) (quoting *Miranda,* 986 F.2d at 1285).

Second, Appellant admitted in the statement he made to Trooper Allen that he used some of the fraudulently obtained money to buy drugs. The trial court found this portion of the statement to be "extraordinarily prejudicial" and therefore, inadmissible. Nevertheless, while playing the recorded statement for the jury and trying to skip past that portion of the audio recording, the Commonwealth inadvertently allowed the jury to hear it. Since, we have concluded on other grounds that the recorded statement is not admissible, these concerns will not recur upon retrial, and therefore we decline to address them further.

## III. THE PROSECUTOR'S COMMENT ON THE LACK OF WITNESSES TO SUPPORT APPELLANT'S THEORY OF THE CASE WAS NOT MISCONDUCT

During cross-examination of Appellant, the prosecutor asked him if his explanation of the case would be supported by

---

3. Clearly, Appellant's first incriminating admission that was made after the original *Miranda* warning but before the assurance of confidentiality need not be suppressed. Under other circumstances, the probative effect of that properly admitted portion of his statement might sustain the conviction, subject to harmless error analysis. Even though the Commonwealth has not requested harmless error review, we do not have that option because all of the instances of identity theft alleged against Appellant were merged into a single count. It is, therefore, impossible to conclude that the admission of the statements made after the assurance of confidentiality had no effect on the verdict.

the testimony of any other witnesses. During his closing argument, the prosecutor reminded the jury that no other witnesses gave testimony that supported Appellant's version of the incidents. The prosecutor explained to the jury that if such witnesses existed, they could have been subpoenaed into court to testify. Appellant argues that these comments represent an improper attempt by the Commonwealth to shift the burden of proof to the defense. We disagree.

██ When a defendant testifies, the prosecutor is allowed to comment on "the absence of obvious witnesses where the absence tends to belie the defendant's claims." *Brown v. Commonwealth*, 313 S.W.3d 577, 630–31 (Ky.2010) (citing *Maxie v. Commonwealth*, 82 S.W.3d 860, 866 (Ky.2002)). A prosecutor does not shift the burden of proof by merely asserting that the defendant failed to rebut the Commonwealth's case. *Tamme v. Commonwealth*, 973 S.W.2d 13, 38–39 (Ky. 1998). The prosecutor's comments concerning the dearth of witnesses to testify on Appellant's behalf was not error, and certainly did not constitute prosecutorial misconduct.

Appellant also argues that other comments in the prosecutor's closing argument amounted to prosecutorial misconduct. Specifically, the prosecutor said, "[Appellant] did not kill anybody, but peddling in drugs is killing people" and later "more drugs sold, more checks bouncing." Of course, Appellant was not on trial for trafficking in illegal drugs. The record reveals that Appellant objected and the trial court, correctly, sustained the objection. While we agree with Appellant that this aspect of the prosecutor's argument was improper, there is no indication that Appellant requested any further action from the court. Consequently, we find that this argument is unpreserved for our review

because "[m]erely voicing an objection, without a request for a mistrial or at least for an admonition, is not sufficient to establish error once the objection is sustained." *Hayes v. Commonwealth*, 698 S.W.2d 827, 829 (Ky.1985).

## IV. CONCLUSION

Appellant has raised a number of other issues that he contends were so prejudicial as to deprive him of a fair trial. Our reversal of the judgment upon other grounds renders those issues moot. For the forgoing reasons, the Rockcastle Circuit Court's judgment is reversed and remanded for a new trial consistent with this decision.

MINTON, C.J., ABRAMSON, KELLER and NOBLE, JJ., concur. CUNNINGHAM and SCOTT, JJ., dissent without separate opinion.

