RENDERED: APRIL 28, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0261-MR

TAYLOR MCKINNEY                                                    APPELLANT


APPEAL FROM FAYETTE CIRCUIT COURT
v.        HONORABLE LUCY ANNE VANMETER, JUDGE
ACTION NO. 20-CR-00061


COMMONWEALTH OF KENTUCKY                                           APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, EASTON, AND ECKERLE, JUDGES.

EASTON, JUDGE: The Appellant ("McKinney") seeks reversal of his conviction
for possession of matter portraying a sexual performance by a minor. The basis for
his request is the circuit court's ruling denying his motion to suppress evidence
from his cell phone. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Narcotics detectives had been investigating drug trafficking by
McKinney and his brother. They had sufficient evidence to obtain a valid search

warrant. They executed that search warrant on July 3, 2019. This search warrant specifically authorized the seizure of cell phones, which often contain evidence of drug trafficking. The detectives seized McKinney's cell phone, the contents of which is the subject of the later motion to suppress.

The detectives wanted to see if McKinney would cooperate to help find "bigger fish," such as suppliers in the drug trafficking. They asked McKinney if he would cooperate. Upon an indication McKinney would cooperate, the detectives asked McKinney to provide the passcode for the phone. McKinney purposefully gave the detectives a wrong passcode.

When the detectives were unable to get into the phone, they went back to McKinney at his residence that same night. The detectives explained they wanted to save time to help in the investigation. They needed the correct passcode. McKinney again purposefully put in more incorrect passcodes, almost to the point of locking the phone to a factory reset, a security setting on such phones. After discussion of the terms of his consent, McKinney finally provided the correct passcode.

The discussion about the written consent serves as the basis of the suppression motion. Detective Todd Hart ("Hart") testified about this second interaction. Unknown to Hart, McKinney secretly was recording the interaction. Hart made clear he knew what was in the phone – evidence of drug trafficking.

There was no discussion of anything other than drug transaction related information.

McKinney later said he did not suspect there was any evidence of any crime other than the drug activity on his phone. McKinney did not believe the videos he took of sex with a fifteen-year-old girl was a crime. His concern about the phone was general, not specific to the sex videos.

To try to protect himself, McKinney altered the consent form. Hart expressed no objection to that part of McKinney's action with respect to language about using evidence against McKinney, but McKinney wrote through language about using information against others, which would be contrary to entire purpose of the discussion. At this, Hart bristled and told McKinney he was either going to grant consent or not, and the evidence would be obtained in the long run anyway. McKinney finally provided the correct passcode.

Detective Rob Sinnott ("Sinnott") reviewed the cell phone and found video files. Sinnott explained such files often contain evidence relevant to drug trafficking, such as showing drug inventory, money, or guns. On one video, Sinnott recognized a girl from the scene of the search. Sinnott assumed this girl was a friend of another girl in the home. Sinnott recalled confirming the girl's age as fifteen during the initial search.

When Sinnott saw a video of the fifteen-year-old girl performing oral sex on McKinney, he was not sure if that was evidence of a crime. Sinnott works in narcotics. He had to look up the age difference to determine if the video was evidence of a crime.

Once Sinnott suspected crimes different from drug trafficking, he stopped his review and then sought and obtained a search warrant. The search pursuant to that warrant found multiple videos of sexual activity between McKinney and the girl. This evidence led to the ten counts in the indictment against McKinney to which he pled guilty to a single count.

McKinney argued the detectives violated an immunity agreement made with him. He further contended his consent was obtained by deception and thus not voluntary. Connected with this voluntariness argument, McKinney contends he should have been read his *Miranda*[1] rights again when the detectives came back to his house. The circuit court denied the motion in a detailed and well-reasoned order. This appeal follows McKinney's conditional guilty plea to a single charge with a one-year probated sentence.

### STANDARD OF REVIEW

> A trial court's denial of a motion to suppress is reviewed under a two-prong test. First, we review the trial court's findings of fact under the clearly erroneous standard. Under this standard, the trial court's findings of fact will

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

be conclusive if they are supported by substantial evidence. Second, we review de novo the trial court's application of the law to the facts.

*Rhoton v. Commonwealth*, 610 S.W.3d 273, 275-76 (Ky. 2020) (footnotes omitted). Here, the controlling facts are not in dispute. They are mostly verified by undisputed audio and video evidence. We therefore focus our analysis on whether the circuit court properly applied these facts to the law.

ANALYSIS

We begin with the contention McKinney should have had his *Miranda* rights repeated when the police returned to the home to talk with McKinney about his phone. Earlier that day, the detectives had read the *Miranda* rights to McKinney and previously given McKinney a citation for the drug charges. When Hart returned to talk with McKinney again, Hart was not in uniform. He displayed no weapon. The conversation occurred in McKinney's residence. McKinney was not arrested after the interaction. McKinney was not in custody, and repeated *Miranda* warnings were not required. This was a consensual discussion during an investigation. *See Quintana v. Commonwealth*, 276 S.W.3d 753 (Ky. 2008).

We next address the claim of an agreement between the detectives and McKinney. First, we emphasize Kentucky law does not authorize a unilateral grant of immunity by a prosecutor in exchange for testimony a witness may give. *Commonwealth v. Blincoe*, 34 S.W.3d 822 (Ky. App. 2000). It stands to reason

-5-

then a police officer, as an actual or apparent agent for the prosecutor, also has no such authority.

Despite this limitation, prosecutors may make agreements not to prosecute in exchange for testimony. In this case, the proffered agreement was to provide the passcode in exchange for no charges. When the Commonwealth makes an agreement and a defendant fulfills his part of the agreement, the Commonwealth will be required to complete its promised terms. This was established in *Workman v. Commonwealth*, 580 S.W.2d 206 (Ky. 1979), *overruled on other grounds by Morton v. Commonwealth*, 817 S.W.2d 218 (Ky. 1991). For reasons which follow, we need not discuss the argument about the authority of the detectives to make an agreement with McKinney.

Agreements between the Commonwealth and a defendant are subject to basic contract rules, although the contracts must be governed by the constitutional nature of the rights involved. *Commonwealth v. Morseman*, 379 S.W.3d 144 (Ky. 2012). Contracts must have full and complete terms. *Id*. at 149. Part of this aspect of contract law is the requirement of a meeting of the minds, which is "the most essential factor" for a valid agreement. *Utilities Elec. Mach. Corp. v. Joseph E. Seagram & Sons*, 187 S.W.2d 1015, 1018 (Ky. 1945).

The detectives and McKinney had no meeting of the minds on the agreement now relied upon by McKinney. The detectives had no idea of looking

-6-

for any evidence of sex crimes by McKinney. McKinney says he did not think there was any criminal activity of a sexual nature on his phone. Despite his later guilty plea, McKinney presented evidence of a representation of the girl being eighteen rather than fifteen. The evidence of sex crimes played no part in the agreement made to excuse McKinney from his liability on drug charges. The agreement does not prevent the sex crime charges based on the evidence in McKinney's phone. *See Putty v. Commonwealth*, 30 S.W.3d 156 (Ky. 2000).

There being no contract issue for McKinney to rely upon, this leaves only the argument McKinney was deceived into giving his consent which made it involuntary. We note the question might properly be phrased as who was deceiving whom. If McKinney thought the sex videos could have been problematic for him, he certainly did not tell Hart of this concern. In terms of any deception, we must look at what was reasonable for McKinney to think based on what Hart was saying, not the other way around.

McKinney relied upon *Leger v. Commonwealth*, 400 S.W.3d 745 (Ky. 2013). We contrast this case. *Leger* involved a waiver of the *Miranda* right to remain silent based on a "false assurance" by the police that statements made by a defendant would remain confidential. *Id.* at 751. While Hart made an assurance here, that assurance is governed by the entire interaction between McKinney and

the detectives. The entire discussion was related to evidence of drug activity. No false assurance was made by the detectives in this case.

Regardless of any merit which may have been found in McKinney's arguments thus far, this case presents a clear example of inevitable discovery. Under this doctrine a violation of rights which might have called for suppression of evidence is excepted from the rule excluding the evidence as the fruit of the poisonous tree, because the evidence would have been obtained without the violation. *Hughes v. Commonwealth*, 87 S.W.3d 850 (Ky. 2002).

McKinney's phone had already been validly seized as evidence of drug trafficking. The only reason for the interaction between the detectives and McKinney was to speed up the process of getting information from the phone to find the "bigger fish" in the drug trafficking activity. It was a matter of time only before the police would have seen the videos.

If no consent had been given, McKinney's phone would have been subject to a specific search warrant based only upon the drug trafficking information, just like what happened with the phone of McKinney's brother. The passcode was not required. As the detectives testified, the Secret Service, with whom the detectives worked in such cases, had the technological ability to access the phone without the passcode. The discovery of the videos was inevitable.

## CONCLUSION

The circuit court's factual findings are supported by the record. The circuit court correctly applied the law to these facts. There was no violation of McKinney's *Miranda* rights. The police did not breach any agreement made with McKinney, and the police did not give any false assurance to McKinney to coerce his consent. In any event, the discovery of the incriminating videos on McKinney's phone was inevitable in the circumstances of this case. The Fayette Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANT:

Bradley D. Clark
Lexington, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky