RENDERED: JULY 14, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0670-MR

ERIN SMITH-SPENCER                                            APPELLANT

                  APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE AUDRA J. ECKERLE, JUDGE
                    ACTION NO. 18-CR-000905-002

COMMONWEALTH OF KENTUCKY                                APPELLEE

OPINION
AFFIRMING

\*\* \*\* \*\* \*\* \*\*

BEFORE: EASTON, JONES, AND LAMBERT, JUDGES.

EASTON, JUDGE: The Appellant, Erin Smith-Spencer ("Smith-Spencer"), appeals an Order of the Jefferson Circuit Court denying his motions to suppress statements he made to police detectives during a recorded interview shortly after a two-year-old girl in his custody died from blunt force injuries. Smith-Spencer conditionally pled guilty to complicity to manslaughter in the first degree and complicity to criminal abuse in the first degree. He received a ten-year sentence

consistent with his plea bargain with the Commonwealth. Upon review, we affirm the trial court's denial of Smith-Spencer's suppression motions.

## FACTUAL AND PROCEDURAL HISTORY

Between November 20-22, 2017, a two-year-old girl ("I.H.") died while in the custody of Smith-Spencer and Tabitha Harris ("Harris"), who was I.H.'s mother. An autopsy determined the cause of I.H.'s death was blunt force injuries. Disturbing photographs confirm this conclusion.

On November 22, 2017, Smith-Spencer and Harris were taken to the police station for questioning by Louisville Metro Police Department ("LMPD") Detectives Chris Middleton ("Middleton") and Mickey Conn ("Conn"). The interviews were video recorded. Both suspects were searched, placed in separate interview rooms, and questioned individually by the detectives. Harris was questioned first, and Smith-Spencer waited approximately ninety minutes before the detectives came in to speak with him for the first time.

Middleton asked Smith-Spencer some administrative questions before administering his *Miranda*[1] rights, both orally and in writing, via a standard LMPD form. Language in the form stated that by signing the form, Smith-Spencer was acknowledging he understood his rights and that he could voluntarily waive those rights and choose to revoke that waiver at any time. Based upon the incriminating

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

statements elicited from Smith-Spencer during this interview, in addition to other evidence, Smith-Spencer was indicted for complicity to murder and complicity to first-degree criminal abuse for his role in the death of I.H.

Smith-Spencer filed a first Motion to Suppress the statements he made to the detectives during the interview. Smith-Spencer claimed in this first motion his statements were involuntary and a result of coercion by Conn. He claimed police obtained statements from him through "sweating," and that his statement about his Social Security number violated *Miranda*. Smith-Spencer filed a second Motion to Suppress. In this second motion, Smith-Spencer again claimed his waiver of his *Miranda* rights was not voluntary.

The trial court conducted a suppression hearing on February 5, 2019. Middleton was the only witness called to testify. The Commonwealth played a portion of the video recording of Middleton's interview with Smith-Spencer. The clip showed Middleton asking some administrative questions, then reading Smith-Spencer his *Miranda* rights, and then asking Smith-Spencer to sign a standard form which acknowledged that he understood his rights. The form also includes language that highlights the voluntary nature of the waiver of those rights.

On cross-examination, defense counsel played several other portions of the interview. Middleton admitted Smith-Spencer was in the interview room for a total of six hours. But Middleton also explained Smith-Spencer had been in the

interview room alone for approximately ninety minutes before his first interview began.

Middleton further testified he was in and out of the interview room because he was also speaking with Harris and other detectives during the same time. In total, throughout the six hours, Smith-Spencer was interviewed for approximately two hours. The interview did not become confrontational (no yelling or cursing at Smith-Spencer). The interview focused on inconsistencies between what the police knew about the circumstances surrounding I.H.'s death and what Smith-Spencer was relaying to them during the interview.

Following the suppression hearing, the trial court took this matter under submission and ultimately entered an order denying Smith-Spencer's suppression motions. The trial court determined that Middleton "clearly and unequivocally" explained Smith-Spencer's rights to him. Smith-Spencer "knowingly and voluntarily" waived them. Smith-Spencer never requested an attorney, never requested to terminate the interview, and never chose to invoke his right to remain silent.

The trial court held that Middleton's conduct did not overbear Smith-Spencer's will nor did it "offend due process." For this conclusion, the trial court cited *Meece v. Commonwealth*, 348 S.W.3d 627, 651-52 (Ky. 2011). Finally, the trial court held the detectives' actions were neither objectively coercive nor

unreasonable. The trial court conceded that it may have been preferable for Middleton to read Smith-Spencer his rights at the very beginning of the interview, but the administrative biographical information (Social Security number) Middleton gathered from Smith-Spencer did not prejudice Smith-Spencer and did not warrant suppression.

Following the denial of his suppression motions, a jury trial resulted in a hung jury. Before any retrial, Smith-Spencer later agreed to enter a conditional guilty plea. Smith-Spencer pled guilty to complicity to first-degree manslaughter and first-degree criminal abuse. Smith-Spencer was sentenced in accordance with the agreement and received a ten-year sentence. This appeal followed.

## STANDARD OF REVIEW

> On appellate review of a trial court's denial of a motion to suppress, we generally apply the two-step process set out in *Ornelas v. United States*, 517 U.S. 690, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996), and adopted by Kentucky in *Adcock v. Commonwealth*, 967 S.W.2d 6 (Ky. 1998). Under this standard we review the trial court's findings of fact for substantial evidence, *id.* at 8, and then conduct a *de novo* review of the trial court's application of the law to the established facts to determine whether its ruling was correct as a matter of law, *Welch v. Commonwealth*, 149 S.W.3d 407, 409 (Ky. 2004).

*Dye v. Commonwealth*, 411 S.W.3d 227, 230-31 (Ky. 2013).

-5-

# ANALYSIS

After extensive review of the written and video record, this Court finds no error, much less a clearly erroneous one, in the factual findings of the trial court. Smith-Spencer was taken to the police station and placed in an interview room. While he was alone for the first approximately ninety minutes, he demonstrated no signs of agitation.

At the suppression hearing, Middleton testified the questioning was in the middle of the afternoon. Smith-Spencer was not handcuffed nor restrained in any way. Following the first solitary period, Middleton asked Smith-Spencer to provide several pieces of biographical information, an act which falls outside of custodial questioning. "[S]tandard booking questions (such as height, age, name, and date of birth) are always permissible under *Muniz*, even if they may be incriminating in effect." *Jones v. Commonwealth*, 641 S.W.3d 162, 170 (Ky. 2022); *Pennsylvania v. Muniz*, 496 U.S. 582, 110 S. Ct. 2638, 110 L. Ed. 2d 528 (1990).

Middleton provided Smith-Spencer with a written copy of the *Miranda* warnings, in addition to going over them verbally. Smith-Spencer signed the document provided to him, which stated that by signing the document he was waiving these rights. The question is whether Smith-Spencer's subsequent waiver was knowing, intelligent, and voluntary. The Commonwealth has the burden of

proof and must demonstrate by a preponderance of the evidence that Smith-Spencer's rights were knowingly, intelligently, and voluntarily waived. *Cox v. Commonwealth*, 641 S.W.3d 101, 114 (Ky. 2022).

Middleton clearly shared Smith-Spencer's rights with him, both orally and in writing. Nothing in the record demonstrates Smith-Spencer suffers from any mental deficiencies. The record contains many *pro se* motions, although Smith-Spencer was represented by appointed counsel. In these motions, Smith-Spencer had no difficulty asserting his rights and providing detailed explanations of his positions.

Smith-Spencer did not appear confused and did not ask for any clarification during his interrogation. There was no evidence that Smith-Spencer was intoxicated or under the influence. Both the "knowing" and "intelligently" factors were met. For these reasons, we look only to the overall voluntary nature of Smith-Spencer's waiver. A preponderance of the evidence must demonstrate that Smith-Spencer made an uncoerced choice to abandon his constitutional rights. *Id.*

> The Due Process Clause of the Fourteenth Amendment prohibits the admission of involuntary confessions: "[if the defendant's] will has been overborne and his capacity for self-determination critically impaired, the use of [the] confession offends due process." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26, 93 S. Ct. 2041, 2047, 36 L. Ed. 2d 854 (1973). "The voluntariness of a confession is assessed based on the totality of the

circumstances surrounding the making of the confession." *Mills v. Commonwealth*, 996 S.W.2d 473, 481 (Ky. 1999). However, the threshold question to a voluntariness analysis is the presence or absence of coercive police activity: "coercive police activity is a necessary predicate to the finding that a confession is not Voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S. Ct. 515, 522, 93 L. Ed. 2d 473, 484 (1986).

*Dye*, *supra* at 232.

To determine if a confession was the result of coercion, the factors to consider are 1) if police activity was "objectively coercive," 2) if said coercion overbore the will of the individual, and 3) whether the coercive police activity was the "crucial motivating factor" behind the confession. *Sykes v. Commonwealth*, 453 S.W.3d 722, 725 (Ky. 2015) (citing *Morgan v. Commonwealth*, 809 S.W.2d 704, 707 (Ky. 1991)).

The facts demonstrate Smith-Spencer's will was not overborne, nor did the behavior of Middleton offend due process. Middleton used a form that enumerated Smith-Spencer's rights and acted as a written waiver of those rights. Middleton asked Smith-Spencer to sign the form he had read to him, saying "I need you to sign right there for me." Neither these words, nor their tone, suggest the kind of coercive pressures *Miranda* seeks to prevent.

In the questioning that followed, Smith-Spencer never chose to invoke his right to remain silent or his right to counsel. Middleton and Conn were

persistent in their questioning, but neither detective was physically or emotionally aggressive. Neither detective made any threats nor promises to Smith-Spencer during the interrogation. *Bustamonte* tells us that, in the context of the primary question of voluntariness, we must look at the totality of the circumstances, including the characteristics of the accused and the details of the interrogation. 412 U.S. at 226, 93 S. Ct. at 2047. Further, *Bustamonte* gives us factors to examine such as age, lack of education, low intelligence, lack of advisement of *Miranda*, length of detention, prolonged questioning, and physical punishment. *Id.*

The only factor which weighs in Smith-Spencer's favor is the amount of time he was in the interview room. In total, it was approximately six hours, with only two hours of questioning. The case at hand can be easily distinguished from other cases which found the length of questioning to be coercive, such as *Reck v. Pate*, 367 U.S. 433, 81 S. Ct. 1541, 6 L. Ed. 2d 948 (1961), where the defendant was subjected to six to seven hours of questioning each day for four days; *Fikes v. State of Alabama*, 352 U.S. 191, 77 S. Ct. 281, 1 L. Ed. 2d 246 (1957), which included questioning for several hours at a time over five-day period; and *Turner v. Commonwealth of Pennsylvania*, 338 U.S. 62, 69 S. Ct. 1352, 93 L. Ed. 1810 (1949), where the defendant was questioned from four to six hours a day for five days. This case is well below the threshold of coercion for the purposes of

*Miranda* and is especially outweighed by this being the only *Bustamonte* factor in Smith-Spencer's favor.

As stated previously, Smith-Spencer was not handcuffed or physically restrained. He asked to use the restroom once, and he was allowed to do so. He also asked for water at one point, with which he was provided. The interview happened during the day, not in the middle of the night, when Smith-Spencer might have been denied adequate sleep.

We will also address some specific assertions raised by Smith-Spencer. Smith-Spencer asserts that the questioning by Conn rose to such a level as to subvert the protections of *Miranda*. While this Court concludes that Smith-Spencer's waiver was made knowingly, intelligently, and voluntarily, Smith-Spencer specifically references these statements by Conn:

> Something else happened, and it may have been an accident . . . . It didn't happen from her falling over by herself. That's what you have to tell us. In order for us to go forward, you have to tell us what happened right there in that moment in time. [VTS_01_4 at 5:52.]

He continued:

> If you just say 'I f**cked up. This is what happened. I made a mistake.' It speaks volumes for your character and for what ac- you know, for your intent or your non-intent. See what I'm saying? Something happened. It is not a question. We are not asking you did something happen. We know it happened. What happened? And you have to tell us. [*Id.* at 6:37.]

While these statements demonstrate a clear desire of Conn for Smith-Spencer to share information, they do not arise to the coercive pressures proscribed by *Miranda*. Smith-Spencer argues that these statements amount to deception about the rights protected by *Miranda*. We disagree. Smith-Spencer cites *Leger v. Commonwealth*, 400 S.W.3d 745 (Ky. 2013) in support. We find the facts in *Leger* distinguishable from the facts at hand, as the interviewing officer in *Leger* led the defendant to believe his answers would be confidential, despite having been advised of his *Miranda* rights. *Id.*

No such promise was made here. Smith-Spencer was informed of his rights at the commencement of this interview, and never once chose to invoke those rights either explicitly or implicitly. These statements and questions by Conn do not go beyond the scope of police questioning and are a far cry from cases like *Gray v. Commonwealth*, 480 S.W.3d 253 (Ky. 2016), where police used fabricated physical evidence to coerce a confession, or *Lynumn v. Illinois*, 372 U.S. 528, 83 S. Ct. 917, 9 L. Ed. 2d 922 (1963), where police used fabricated information to emotionally coerce a defendant into a confession.

The detectives in this case used actual information at their disposal to draw the truth from Smith-Spencer during a valid custodial interrogation. There was no more coercion in this case than there is in any typical interaction with the

police in interrogation about such cases. *See Michael v. Butts*, 59 F.4th 219, 228-29 (6th Cir. 2023) (case from the Western District of Kentucky).

Smith-Spencer also takes issue with another line of questioning by Conn where he analogized this case with another case:

> We went for hours and hours talking to the same guy about the same type of thing. You know what eventually what he did? Eventually he grabbed this kid, picked it up, and dropped him in the crib. Right? But he didn't want to say that at first. He went around and around like, "well, the kid just fell and hit his head against the side of the crib." We're like, man, there's no way that a kid falls, hits his head against a wood spindle, and it causes that kind of head injury. And once he finally told us, "man I, yeah, I was frustrated, I just dropped him in the crib, he hit the crib, bounced around, his head hit the rails. That's what happened. And we were like, "thank you." That's what we've been trying to get from you." [VTS_01_4 at 21:40.]

Conn continued:

> So, we're at that same place with you. With you saying, "well, she was standing there, she fell over a couple of times. She fell over a couple of times walking across the floor, she fell over a couple of times." You keep saying she fell over a couple times. That's, that's not, that's not what happened, first of all, all by itself. Second of all, it's hurting you. Because you are not telling us what happened. You know, once you tell us what happened, that's what is going to help you." [*Id.* at 22:43.]

-12-

For the same reasons, we do not find this to be coercive. Shortly after this statement by Conn, Smith-Spencer confessed to dropping I.H. Prior to this confession, the detectives knew the evidence they had was not lining up with what Smith-Spencer was telling them. It was their prerogative to draw the truth out of Smith-Spencer with the type of questioning they used. Perhaps the truth was that his co-defendant or a third party had caused the injuries and death, or perhaps it was the result of a horrible accident. It was only Smith-Spencer (and perhaps Harris) who were able to answer this question. The detectives did not stretch the truth beyond what is allowed to properly perform their investigative duties. They did not subvert *Miranda* and obtained a valid confession from Smith-Spencer.

## CONCLUSION

Middleton's administration of Smith-Spencer's *Miranda* rights was adequate. Smith-Spencer knowingly, intelligently, and voluntarily waived those rights. The questioning by Middleton and Conn did not put undue coercive pressure on Smith-Spencer. For these reasons, the trial court did not err in denying Smith-Spencer's motions to suppress his confession and is therefore AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jared Travis Bewley
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky